UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONALD BROCK,                             | Case No. 1:09-cv-310
                                          |
    Plaintiff,                            | HONORABLE PAUL L. MALONEY
                                          |
    v.                                    |
                                          |
MIKE COX, Attorney General for the State of Michigan, |
in his official capacity,                 |
                                          |
    Defendant.                            |

_____

**OPINION and ORDER**

**Denying the Plaintiff's Application for a Temporary Restraining Order;**

**Taking under Advisement the Plaintiff's Application for a Preliminary Injunction;
Directing Further Briefing Regarding the Propriety of a Preliminary Injunction;
Scheduling Oral Argument on Plaintiff's Application for a Preliminary Injunction**

On Wednesday, May 20, 2009, plaintiff Ronald Brock initiated this First Amendment freedom-of-speech case by filing a complaint and an application for a temporary restraining order ("TRO") and/or preliminary injunction ("PI"), which was served on defendant Mike Cox ("the State") that same day. Brock asserts a facial challenge to MICH. COMP. LAWS § 750.38, which provides, in its entirety:

> *Any person who shall post, place or display* on any sign board, bill board, fence, building, sidewalk, or other object, or *in any street, road, or other public place, any sign, picture, printing or other representation of murder, assassination, stabbing, fighting or of any personal violence, or of the commission of any crime*, or any representation of the human form in an attitude or dress which would be indecent in the case of any living person, if such person so appeared in any public street, square

or highway, *shall be guilty of a misdemeanor*.

Emphasis added.[1]  Brock contends that this statute violates the right to freedom of speech guaranteed by the First Amendment "because it sweeps within its coverage expressive activities that are" constitutionally protected, that it is unconstitutionally vague "because a person of common intelligence must guess at what activities are proscribed . . . and because it gives too much discretion to law enforcement." Brock also contends that the statute is an unconstitutional content-based restriction on speech. TRO at 8 ¶ 8.

Brock seeks first a temporary and later a permanent injunction forbidding the State from enforcing the statute against Brock or others. Brock's TRO brief stated that he

> seeks this immediate relief because he is returning to the State of Michigan with his truth truck from on or about May 19-22, 2009, on or about June 12-15, 2009, and on or about August 6-17, 2009. He fears arrest and prosecution pursuant to M.C.L. 750.38 over the constitutionally protected images he displays on his truck. To avoid arrest and prosecution, he will have to self-censor his protected speech.

TRO at 4, citing Ex A (Brock Affidavit) ¶ 6. As ordered, the State filed a brief in opposition to the TRO/PI on Friday, May 22. **For the reasons that follow, the court will deny Brock's application for a TRO but will entertain his PI application and invite further briefs and oral argument.**

**BACKGROUND**

On March 24, 2008, Brock was driving a truck on public streets in Allen Park, a town in

---

[1] WestLaw contains no decisions, from a Michigan state court or otherwise, which applies or interprets MICH. COMP. LAWS § 750.38. Only one decision cites the statute at all, and then merely to note that the prosecutor chose to file charges under a different statute instead. *See People v. Huffman*, 702 N.W.2d 621, 625-26 (Mich. App. 2005), *app. denied*, 708 N.W.2d 95 (Mich.), *cert. denied*, 549 U.S. 814 (2006).

Wayne County, Michigan, displaying signs and a large photograph which he describes as depicting "victims of the Nazi Holocaust" and bearing the title "Hitlers [sic] Death Camps." TRO at 5 ¶ 3, citing Brock Aff ¶¶ 1-2. A town police officer informed Brock that the police had received complaints about the display, and he told Brock to remove the photo from the truck's exterior. After Brock refused, the officer threatened him with prosecution under MICH. COMP. LAWS § 750.38, but he relented and permitted Brock to go about his business, whereupon Brock left Michigan "without further interference from Michigan law enforcement." TRO at 5 ¶¶ 4-6, citing Brock Aff ¶¶ 3-5.

Since that incident, Brock has continued to drive his truck, which continues to display a large photo of concentration-camp victims and sometimes photographs of human beings killed by induced abortion. TRO at 6 (citing Brock Aff ¶ 6). Brock alleges that at least two other pro-life advocates have been charged with violating this same statute for displaying photos of aborted babies on a public sidewalk. For example, in *Norton v. Granholm*, Case No. 4:2001-cv-172 (where Brock was not a party), then-District Judge David W. McKeague entered a three-page consent judgment and stipulated permanent injunction order dated February 8, 2002 which provided, in pertinent part,

> 1. . . . Plaintiff Norton, Defendant Granholm, and Defendant Gregart [Kalamazoo County Prosecutor] stipulate and agree that Michigan Penal Code § 750.38, as applied against Plaintiff's demonstrations on October 11, 2001, on the public sidewalk and other public access areas outside of the Planned Parenthood facility in Kalamazoo, Michigan, with handheld signs displaying the images of aborted fetuses or children violates Plaintiff's First Amendment rights;
>
> 2. Defendant[s] . . . agree to be enjoined from enforcing Michigan Penal Code § 750.38 against Plaintiff Norton when she is engaged in peaceful expressive conduct on the public sidewalks or other public access areas of the State of Michigan with signs depicting images of aborted children, fetuses, or human embryos, subject to any constitutionally valid time, place, and manner restrictions.
>
> 3. For purposes of this consent judgment and stipulated permanent injunction order, Plaintiff Norton is a prevailing party as against Defendant Granholm as that term is

> used in 42 U.S.C. § 1988, and she is entitled to her reasonable attorneys fees and costs from Defendant Granholm in the agreed amount of $1,500;
>
> 4.  Plaintiff Norton reserves the right to seek reasonable attorney fees and costs against Defendant Gregart pursuant to 42 U.S.C. § 1988; * * *

TRO Ex B-2 at 1-2. Brock explains that this history makes him especially afraid to engage in that same protected conduct, for fear that he too will be charged. TRO at 7 (citing Brock Aff ¶ 6). Brock states that he also plans to drive the truck and its anti-abortion photograph(s) this summer at an annual Detroit-area event known as "The Woodward Dream Cruise," as he did in August 2001. *See* TRO at 10 and n.2.[2]

---

[2]
At the August 2001 Woodward Dream Cruise event, Brock drove his truck bearing anti-abortion messages and "large photographs of born and unborn babies, aborted babies, and victims of the Nazi Holocaust." TRO Ex B-3 at 2. The police of Royal Oak, Michigan stopped him and searched and seized his truck, leading him to sue them for First Amendment violations in the U.S. District Court for the Eastern District of Michigan. On April 30, 2003, Judge Paul V. Gadola entered a three-page Consent Judgment and Stipulated Permanent Injunction which provided, in pertinent part,

> 1.  The First Amendment protects the symbols, messages, and signs, including those depicting images of aborted babies, fetuses, or human embryos, that Defendants prevented Plaintiff Brock from displaying on Woodward Avenue, a public street, during the 2001 Woodward Dream Cruise weekend.
>
> 2.  * * * Brock was prevented from demonstrating with the constitutionally protected symbols, messages, and signs, including those depicting images of aborted babies, fetuses, or human embryos, and Plaintiff Brock was deprived of his rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. sec. 1983.
>
> 3.  [relating to the search and seizure of Brock's motor vehicle and personal property]
> * * *
> 4.  IT IS FURTHER ORDERED AND ADJUDGED that Defendant . . . its employees, agents, and successor in office are permanently enjoined from preventing and/or interfering with Plaintiff Brock when he is peacefully displaying his pro-life, Christian, and political symbols, messages, and signs, including signs depicting images of aborted babies, fetuses, or human embryos, in a traditional public forum

**DISCUSSION**

To obtain preliminary injunctive relief, Brock must show that he is being threatened with a legally cognizable irreparable injury for which there is no adequate legal remedy (such as monetary damages). *Essroc Cement Corp. v. CPRIN, Inc.*, 593 F. Supp. 962, 967 (W.D. Mich. 2008) (Maloney, C.J.) (citing *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (Thomas, J.))).[3]

In considering whether to award preliminary injunctive relief, this court will have to consider

---

in the City of Royal Oak, including on Woodward Avenue during the Woodward Avenue Dream Cruise weekend, and are also permanently enjoined from stopping, searching, and seizing his motor home, which depicts images of aborted babies, fetuses, or human embryos, and his other property without probable cause, a warrant, or consent.

5. * * * Plaintiff Brock is entitled to nominal, compensatory, and punitive damages and that Defendant, the City of Royal Oak, Michigan, shall pay Plaintiff Brock the following combined amount: $27,000.00

6. * * * Defendant, the City of Royal Oak, Michigan, shall pay Plaintiff Brock's attorneys, the Thomas More Law Center, their reasonable attorneys' fees and costs in the amount of $17,707.77.

7. * * * this Consent Judgment shall be *res judicata* to claims that were or could have been alleged as a result of the above-described incident on August 17, 2001. This Consent Judgment has no preclusive effect with respect to claims arising after the agreement of the parties.

TRO Ex B-3 at 7-8.

[3] Even temporary *unemployment* or other *total* loss of income, remediable later by payment of money, is not irreparable harm. *See Overstreet*, 305 F.3d at 579 (citing, *inter alia*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury") and *Alum. Workers Int'l Union, AFL-CIO, Local 215 v. Consol. Alum. Corp.*, 696 F.2d 437, 444 (6th Cir. 1982) (finding that employees did not suffer irreparable harm from unemployment pending arbitration)).

(1) whether Brock has shown a substantial likelihood that he will prevail on the merits of his free-speech, overbreadth, and vagueness claims, (2) whether there is a threat of irreparable harm to Brock if the TRO does not issue,[4] (3) whether issuance of the TRO would substantially harm others, and (4) whether issuance of the TRO would serve the public interest. *Hilliard v. Clark*, 2007 WL 2589956, *3 (W.D. Mich. Aug. 31, 2007) (Maloney, J.) (citing *Warshak v. US*, 490 F.3d 455, 465 (6th Cir. 2007)).[5]

---

[4] The failure to show irreparable harm, by itself, can justify the denial of preliminary injunctive relief without consideration of the other three factors. *See Hacker v. FBOP*, 2006 WL 2559792, *8 (E.D. Mich. Sept. 1, 2006) (Lawson, J.) ("The failure to demonstrate irreparable harm is fatal to the petitioner's request for a [PI]. Therefore, the Court need not evaluate the other factors.").

[5] Two circuits hold that likely success on the merits is a *sine qua non* of injunctive relief. *See Am. Fed'n of Gov't Employees, AFL-CIO v. US*, 104 F. Supp.2d 58, 64 (D.D.C. 2000) ("*AFGE*"); *Wine & Spirits Retailers, Inc. v. RI*, 418 F.3d 36, 46 (1st Cir. 2005) ("The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become a matter of idle curiosity."). The rationale is that "'[w]ithout such a substantial indication, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'" *AFGE*, 104 F. Supp.2d at 64 (quoting *Am. Bankers Ass'n v. NCUA*, 38 F. Supp.2d 114, 141 (D.D.C. 1999) (quoting *Wash. Metro. Area Transit Auth. v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977))).

*Accord Champion Parts Rebuilders, Inc. v. Cormier Corp.*, 661 F. Supp. 825, 849 n.52 (N.D. Ill. 1987) ("[T]he merits inquiry may be viewed as the most critical. [A] failure on that score is immediately fatal to plaintiff.") (citing *O'Connor v. Bd. of Ed. of Sch. Dist. No. 23*, 645 F.2d 578, 580 (7th Cir. 1981));

*San Miguel v. DPW*, 2008 WL 541150, *5 (S. Ct. Guam Terr. Feb. 20, 2008).

Our Circuit has not yet expressly called the likelihood of success on the merits the *sine qua non* of preliminary injunctive relief. It has held, however, that it was not error to dispense with analysis of the other three factors where the movants made a weak showing on the merits:

> Because the district court found . . . that the plaintiffs did not have a substantial likelihood of success on the merits . . . [it] did not make findings on the record with respect to the remaining three factors to be considered when determining whether a preliminary injunction should issue. Since the district court apparently considered

On the first factor of the TRO test, the State points to at least two reasons why it believes Brock has not shown any likelihood of success on his claims so far: the State questions whether Brock's claims are ripe, and it questions whether he has standing. The State seems to argue that it is doubtful whether Brock has shown that the State's enforcement of the challenged statute has *actually* ever infringed on his First Amendment right to display such photos, and that he also fails to show any logical, realistic fear that the statute might be enforced against him soon (which fear might arguably deter him from exercising that right pending the outcome of this case). *See* State's 1st Brief in Opposition to the TRO/PI Application, filed May 22, 2009 ("Def's Opp") at

It is true that if a party lacks standing or his claims are not ripe for adjudication, he will be unable to prevail on the merits of his claims because the court will not consider their merits. In turn, the failure to show any likelihood of success on the merits – let alone a strong or substantial likelihood of success – would be enough, by itself, to warrant denial of a TRO. *See Abbey v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006) ("a finding of no likelihood of success 'is usually

---

that the failure of the plaintiffs to show a likelihood of success on the merits was significant enough to prevent the injunction from issuing, the additional findings were not necessary. *See generally American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 963 F.2d 855, 862 (6th Cir. 1992) (stating that the district court is not required to make findings on factors that are not dispositive with respect to the issuance of a preliminary injunction); 11A [Wright, Miller, and Kane], FEDERAL PRACTICE & PROCEDURE § 2948.3, at 184-188 (2d ed. 1995) (noting that the plaintiff must generally show at least some probability of success on the merits in order to obtain a preliminary injunction).

*Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (¶ break added). *See also Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) ("[A] district court is not required to make specific findings concerning each of the four factors used [in federal courts] in determining a motion for preliminary injunction if fewer factors are dispositive of the issue."). For a summary of all circuit standards for a TRO, *see Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1363-67 (Fed. Cir. 2008) ("All of the circuits have placed the [PI] in terms of the likelihood of success on the merits and equitable factors. No circuit has held that it suffices simply to raise a 'substantial question.'").

fatal'") (quoting *Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)).[6]

**Moreover, if Brock failed to show a substantial likelihood of success on the merits (factor one), it would necessarily follow that he has not satisfied the second factor either:**

---

[6]

As to the second factor of the test for a TRO, "it is well settled that loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distr. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.); *see also Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify preliminary injunctive relief.") (citing *Elrod*, 427 U.S. at 373). *See, e.g., Plane v. US*, 750 F. Supp. 1358 (W.D. Mich. 1990) (issuing PI against Defense Logistic Agency's random urinalysis drug-testing program of certain civilian employees, where testing arguably infringed on their Fourth Amendment rights).

Thus, if Brock could show a substantial likelihood of success on the merits (factor one), he would automatically have shown that he would be irreparably harmed absent issuance of a PI. *See Connection Dist.*, 154 F.3d at 288 ("Thus, to the extent that Connection can establish a substantial likelihood of success on the merits of its First Amendment claim, it also has established the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights.") (citing *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995)).

Indeed, if Brock could show a substantial likelihood of success on the merits (factor one), he would almost surely satisfy factors three and four as well (harm to others if a PI issues, and where the public interest lies). *See ACLU of Kentucky v. McCreary Cty.*, 354 F.3d 438, 445 (6th Cir. 2003) ("[B]ecause Plaintiffs have demonstrated a likelihood of succeeding on the merits of their Establishment Clause claim, the other three preliminary factors follow in favor of granting the injunction.") (citing *Connection Dist.*, 154 F.3d at 288 ("the determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because 'it is always in the public interest to prevent the violation of a party's constitutional rights.'") (quoting *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)));

*Becker v. Granholm*, 272 F. Supp.2d 643, 649 (E.D. Mich. 2003) (George C. Steeh, J.) (without analysis of 2d, 3d, and 4th factors, court stated, "Having determined that plaintiff is substantially likely to prevail on the merits of her constitutional claims [contending that State violated Establishment and Free Exercise clauses by denying her a scholarship because she was pursuing a degree in theology], the court finds plaintiff is entitled to preliminary injunctive relief.").

"Absent a showing of substantial likelihood of success on the merits of his First Amendment claim, Plaintiff fails to show irreparable injury." *Wappler v. Kleinsmith*, 2009 WL 483223, *3 (W.D. Mich. Feb. 24, 2009) (Robert Jonker, J.) (citing *Connection Dist.*, 154 F.3d at 288).  In turn, once the court concluded that Brock had not satisfied the first two factors of the preliminary-injunctive-relief test, the court would not need to consider the third and fourth factors (harm to others if the TRO does issue, and the public interest).  *See Edwards v. Burnett*, 2006 WL 1983236, *2 (E.D. Mich. July 12, 2006) ("Given the impossibility of Plaintiff's success on the merits, and the lack of showing of irreparable harm, it is not necessary to discuss the other two factors . . . .").

**Alternatively, the State argues that even if Brock has standing and his claims are ripe and not barred by *res judicata*, those claims fail on their merits.**  *See* TRO at 12-13 (statute is overbroad) and Def's Opp at 9-12 (not overbroad), then TRO at 14-17 (statute is impermissibly vague and accords too much enforcement discretion to police) and Def's Opp at 12-14 (not vague). The court will be better able to render a well-considered decision on standing, ripeness, and the merits with the benefit of fuller briefs, supplemented by oral argument.

**In any event, the court need not consider these issues on the unusually-expedited basis reserved for controversies where an application for a TRO is truly appropriate.**  Brock's own actions belie his assertion that the situation is so urgent that a TRO schedule is needed. Significantly, although the offending incident occurred on March 24, 2008, Brock waited over one full year before filing the instant complaint and TRO/PI application.  Moreover, although Brock ostensibly knew that he would be entering Michigan on Tuesday, May 19, he waited until

Wednesday, May 20 to initiate this case rather than doing so in advance of that trip. *Cf. Chapman Law Firm v. US*, 71 Fed. Cl. 124, 126 (Fed. Cl. 2006) ("[T]he Court denied Chapman's Application for a [TRO], principally Chapman had not shown any *immediate* irreparable harm, or any *urgent* need to maintain the status quo.") (emphasis added), *aff'd in pt and rev'd in pt o.g. sub nom. Chapman Law Firm v. Greenleaf Const. Co.*, 490 F.3d 934 (Fed. Cir. 2007); *US v. First Wall St. SBIC, L.P.*, 1998 WL 352966, *1 (S.D.N.Y. June 26, 1998) ("As for emergency relief, the movant has not demonstrated any urgency or imminent change in the status quo that would justify an 'emergency hearing.'"); *Craig Food Indus., Inc. v. Taco Time Int'l, Inc.*, 469 F. Supp.2d 516, 526 (D. Utah 1979) ("Most significant, despite the fact that CFI began paying the funds into court some nine months before trial, TTI did not at any time file a motion for release of the funds CFI had paid into court. In view of this fact the court is not persuaded that the collection of royalty payments is a matter of genuine urgency to TTI."). Finally, according to a supplemental declaration which the plaintiff just faxed to the court, he has concluded his latest trip to Michigan and does not plan to return until "on or about June 12-15, 2009 . . . ." Declaration of Ronald Brock dated May 22, 2009, ¶ 1 ("While I *was* in the State of Michigan with my truth truck and displays on May 19-22, 2009 . . .") (emphasis added) and ¶ 2.

Accordingly, the court declines Brock's application for a TRO, but it will give a fair hearing to both sides on the more deliberate schedule that befits a PI application.

**ORDER**

Plaintiff's application for a temporary restraining order is **DENIED**.

Plaintiff's application for a preliminary injunction remains pending.

-10-

No later than Wednesday, May 27, 2009, **the defendant SHALL FILE** an amended, expanded brief in opposition to the application for a preliminary injunction.  That brief will supersede and replace (not supplement) the defendant's first opposition brief.  That brief **SHALL ADDRESS** the U.S. Supreme Court and Sixth Circuit decisions cited in the TRO brief at 8-9.

No later than Tuesday, June 2, 2009, **the plaintiff SHALL FILE** a reply brief.

The court will hear **ORAL ARGUMENT** beginning at 3:00 p.m. on Monday, June 8, 2009.

This is not a final order, and "[i]t is well established that '[a]n order granting, denying, or dissolving a temporary restraining order is generally not appealable.'" *Essroc*, 593 F. Supp.2d at 971 (quoting *Workman v. Bredesen*, 486 F.3d 896, 922 (6th Cir.) (Sutton, joined by Siler) (quoting MOORE'S FED. PRACTICE § 65.41 (3d ed. 2005)), *cert. denied*, 550 U.S. 930 (2007)).[7]

**IT IS SO ORDERED** on this ___22nd___ day of May 2009.

        /s/ Paul L. Maloney
        Paul L. Maloney
        Chief United States District Judge

---

[7] If this order is appealable, it will be reviewed only for abuse of discretion.  *See Workman*, 486 F.3d at 904 (citing, *inter alia*, *Bowersox v. Williams*, 517 U.S. 345, 346 (1996)).  "[A] district court 'abuses its discretion when we are left with the definite and firm conviction that its conclusion was a clear error of judgment.'" *Melton v. Blankenship*, – F. App'x –, –, 2009 WL 87274, *4 (6th Cir. Jan. 13, 2009) (Guy, Griffin, S.D. Ohio D.J. Watson) (citing *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006) (Griffin, J.)).  This occurs "'where the district court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based.'" *Rogers v. City of Warren*, 302 F. App'x 371, 375 (6th Cir. 2008) (Griffin, J.) (quoting *Days Inn*, 445 F.3d at 906).